UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KADEJAH HENDERSON,<br><br>*Plaintiff*,<br><br>v.<br><br>TELISHA JONES, TJM INC., and HALLWOOD MEDIA,<br><br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:26-cv-926-SFR |

**RECOMMENDED RULING**

Plaintiff brings this action *in forma pauperis* alleging that Defendants appropriated her likeness for the AI-generated avatar "Xania Monét" that is the face of a musical album they released. ECF 1. Pursuant to 28 U.S.C. § 1915(e), the district court must review *in forma pauperis* complaints and dismiss any complaint that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Complaint was referred to the undersigned to conduct that review. ECF 12. For the reasons below, I recommend that Plaintiff be permitted to proceed on one claim but that the others be dismissed.

**A. Allegations**

The Complaint, which itself appears to have been drafted with AI assistance, alleges as follows. Plaintiff Kadejah Henderson is a Connecticut resident and a professional music artist, songwriter, and brand designer and an "established social media influencer with an active online presence since 2006, accumulating over 5 million views." ECF 1 at 8. Defendant Telisha Jones, a Tennessee resident, through corporate entity Defendant TMJ Inc., created and owns an AI digital avatar and musical persona called Xania Monét. *Id.* TMJ and Defendant Hallwood

Media, a California entity, published and distributed a 24-track commercial music album *Unfolded*, which is credited to Monét. *Id.* "The primary visual cover art and promotional materials utilized by the Defendants to package, advertise, and sell the album *Unfolded* prominently display the exact physical facial likeness and features of the Plaintiff." *Id.* The album was released globally for streaming and digital purchase on platforms such as Apple Music, Spotify, YouTube Music, Tidal, and Amazon Music. *Id.* Plaintiff notified Defendants that she did not authorize their use of her likeness but they refused to credit her or alter the artwork. *Id.* at 9.

Plaintiff asserts three claims: (1) false endorsement under the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of her right of publicity under N.Y. Civil Rights Law §§ 50-51; and (3) misappropriation of likeness under the Connecticut common law. *Id.* at 5. She seeks credit and attribution on the *Unfolded* album, a royalty percentage, disgorgement of profits, and punitive damages. *Id.* at 6.

**B. Discussion**

**1. Lanham Act claim (Count One)**

Plaintiff's allegations fail to state a viable claim of false endorsement under 15 U.S.C. § 1125(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The court liberally construes pleadings and briefs submitted by self-represented plaintiffs, "reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017).

Section 1125(a) provides a cause of action against:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A). The central requirements of a false endorsement claim are: "(1) that the mark . . . is distinctive as to the source of the good or service at issue, and (2) that there is the likelihood of confusion between the plaintiff's good or service and that of the defendant." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 257 (2d Cir. 2021). Of particular note to this case, "courts have recognized that celebrities have a trademark-like interest in their individual personas." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 355 (S.D.N.Y. 2014) (collecting cases); *see also Electra* at 257–59 (analyzing whether unauthorized use of models' photos in strip club advertising caused consumer confusion).

**a. False designation of origin or misleading representation**

Here, the Complaint obviously alleges the "goods or services" and "in commerce" elements. It also plausibly alleges a "false or misleading representation of fact." The allegations raise a reasonable inference that a person familiar with Plaintiff might, upon seeing her likeness depicted in the Monét avatar, believe that Plaintiff was associated with the product. *See, e.g.*, *Johnson v. Mi Rancho, LLC*, No. 3:19-cv-862 (MPS), 2021 WL 6498264, at *3 (D. Conn. Aug. 16, 2021) (false representation element adequately pleaded where defendants allegedly extracted models' images from prior work and inserted them into advertisements for nightclub, "giving the impression that Plaintiffs were somehow associated with the club when, in fact, they were not").

**b. Consumer confusion**

However, the Complaint fails to plausibly allege consumer confusion under the *Polaroid* factors. *See Polaroid Corporation v. Polarad Electronics Corporation*, 287 F.2d 492, 495 (2d Cir. 1961). As relevant here, those factors include: (1) strength of the trademark; (2) evidence of actual consumer confusion; (3) evidence that the imitative mark was adopted in bad faith; (4) similarity of the marks; (5) proximity of the products and their competitiveness with one another; and (6) sophistication of consumers in the relevant market. *Johnson*, 2021 WL 6498264, at *3 (citing *Polaroid* at 496). The Second Circuit has advised that district courts usually should explain their reasoning as to all the factors when balancing them. *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 115–16 (2d Cir. 2023).

**i. Allegations re: *Polaroid* factors**

Regarding strength of the trademark, that factor turns on "the level of recognition the celebrity has among the segment of the public to whom the goods are advertised." *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 245 (S.D.N.Y. 2019), *aff'd*, No. 22-916, 2023 WL 4229913 (2d Cir. June 28, 2023). The Complaint alleges that Plaintiff "is a high-profile public figure, having served as the former Miss Black New York USA, a Miss New York USA Finalist, and a prominent Hartford civic figure who won Hartford's Best contest over the former Mayor" and "an established social media influencer with an active online presence since 2006, accumulating over 5 million views." ECF 1 at 8. In assessing recognizability in recent cases, courts have examined income, prominence, and social media followings and found that litigants who were significantly higher on those scales than Plaintiff (per her allegations) still had a weak strength of trademark. *See Souza v. Exotic Island Enters., Inc.*, No. 18-cv-9448 (KMK), 2021 WL 3501162, at *9 (S.D.N.Y. Aug. 9, 2021), *aff'd*, 68 F.4th 99 (2d Cir. 2023). In one such case, the trial court

found supermodel Carmen Electra's trademark strong but that of lesser-known models relatively weak:

> Unlike plaintiff Electra, none of these other plaintiffs offered evidence of significant income earned through their various appearances. And while these other plaintiffs have participated in promotional campaigns for a wide variety of brands and appeared in magazines, TV shows, and movies, their resumes are devoid of evidence that they actually garnered recognition for any of their appearances.

*Toth v. 59 Murray Enters., Inc.*, No. 15-cv-8028 (NRB), 2019 WL 95564, at *6–7 (S.D.N.Y. Jan. 3, 2019), *aff'd in relevant part sub nom. Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233 (2d Cir. 2021). Similarly, another trial court found that litigants who had participated in promotional campaigns for a wide variety of brands; appeared in magazines, television shows, and movies; and had millions of social media followers were not sufficiently recognizable to have a strong trademark in their personas. *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 247 (S.D.N.Y. 2019) (noting in contrast courts have identified Carmen Electra, Drake, Woody Allen, Nolan Ryan, and 50 Cent as examples of celebrities with strong marks), *aff'd*, No. 22-916, 2023 WL 4229913 (2d Cir. June 28, 2023). In this case, the recognizability that Plaintiff alleges is even weaker than the models in those cases, so the Complaint does not plausibly allege that she has a strong personal trademark.

Next, regarding the actual consumer confusion factor, the Complaint alleges the existence of "specific news articles and industry publications that publicly identified the face on the album as that of the Plaintiff," ECF 1 at 9, which is not a clear allegation of consumer confusion but does, at least, imply that it is possible.

Regarding bad faith, the focus of that inquiry under *Polaroid* is "whether defendant in adopting its mark intended to capitalize on plaintiff's good will." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000); *see also The Sports Auth.,*

*Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996) (analyzing "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product"). In the present case, although the Complaint suggests that Defendants deliberately modeled the Monét avatar on Plaintiff's likeness, there is no plausible allegation that they did so hoping to capitalize on her reputation or any goodwill she built in her personal brand.

Regarding similarity, the Complaint alleges that the Monét avatar "display[s] the exact physical facial likeness and features of the Plaintiff." ECF 1 at 8.

Regarding proximity, "courts look to the overlap or 'intersection' of audiences or consumers." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 358 (S.D.N.Y. 2014). Plaintiff alleges that she is a "professional music artist, songwriter, and brand designer" and "social media influencer" and "a former Miss Black New York USA, a Miss New York USA Finalist, and a prominent Hartford civic figure who won Hartford's Best contest over the former Mayor." ECF 1 at 8. This does imply some overlap with Defendants' internet-based music market. However, the Complaint also alleges that "[t]he release and commercialization of the Al persona Xania Monet went viral across global social media networks," ECF 1 at 8, which implies that if the alleged markets were depicted in a Venn diagram, the "the segment of the public to whom the goods are advertised" by Defendants, *see Gibson*, 391 F. Supp. 3d at 245, would wholly encompass and extend well beyond Plaintiff's. Consequently, this factor does not favor Plaintiff.

Lastly, regarding the sophistication factor, courts assume that untrained consumers are more likely to be misled or confused by similar marks than more sophisticated buyers. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003). The allegation that the *Unfolded* album

was broadly released across all streaming platforms, ECF 1 at 9, implies that the consumers are unspecialized and unsophisticated.

**ii. Balancing the *Polaroid* factors**

As noted above, the purpose of the *Polaroid* balancing test is to determine whether "there is the likelihood of confusion between the plaintiff's good or service and that of the defendant." *Electra*, 987 F.3d at 257. The factors need not all weigh evenly: "'The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused' about the plaintiffs' endorsement of the defendant's brand." *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 437 (S.D.N.Y. 2021) (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)). And although Lanham Act claims often survive motions to dismiss, given that the court must assume the truth of the allegations at the pleading stage, claims nevertheless can be dismissed as a matter of law where a plaintiff "cannot possibly show confusion as to source or sponsorship." *Id.* (quoting *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990)); *see also Nat. White, Inc. v. Dentorium Prods. Co.*, 210 F.3d 355 (2d Cir. 2000) ("the ultimate holding of whether there is a likelihood of confusion, which is reached after weighing the above factors, is a legal issue").

Applying these standards, the allegations of recognizability, actual confusion, bad faith, and market overlap are not sufficiently strong to state a viable claim for false endorsement.[1] In simple terms, the Complaint fails to plausibly allege that Plaintiff's endorsement would likely boost Defendants' sales. A relatively unknown person cannot claim false endorsement because

---

[1] The similarity and sophistication factors favor Plaintiff but, on balance, are outweighed by the deficiencies in the allegations concerning the other factors.

"consumers would not infer that an unknown model was 'endorsing' a product, as opposed to lending her image to a company for a fee." *Bondar v. LASplash Cosms.*, No. 12-cv-1417 (SAS), 2012 WL 6150859, at *7 (S.D.N.Y. Dec. 11, 2012). The allegations state that Plaintiff is publicly known in the Hartford area (and previously as a beauty contestant in New York) and has had 5 million social media views over 20 years; that some unnamed publications noticed the similarity between her and Monét; and that she is in a similar online music and social media space as Defendants. Even assuming the truth of these allegations, they do not support a reasonable inference that she had developed such recognizability and goodwill in her personal brand that Defendants would want to capitalize on it. That is not to say that celebrity status is essential to a false endorsement claim: "there is a level of consumer recognition short of celebrity—as the term is usually understood—capable of causing consumer confusion." *Id.* But Plaintiff's allegations fall short of that benchmark: not completely anonymous but not sufficiently well known to raise a reasonable inference that Defendants would covet her endorsement.

As a final note, the problem is not Plaintiff's contention that Defendants appropriated her likeness without authorization—in fact, as discussed below, I recommend that she be permitted to proceed on her Connecticut common law claim for appropriation of likeness. However, trademark law has a narrower focus, "which is to secure the public's interest in protection against deceit as to the sources of its purchases, and the businessman's right to enjoy business earned through investment in the good will and reputation attached to a trade name." *Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 57 (2d Cir. 1995) (cleaned up). Accordingly, not every appropriation of likeness claim will also support a cause of action for false endorsement.

*See*, *e.g.*, *Electra*, 987 F.3d at 253 (affirming denial of false endorsement claims while allowing state law appropriation of likeness claims to proceed).

For these reasons, I recommend that Count One (false endorsement) be DISMISSED with leave to amend in case Plaintiff is able to add plausible factual allegations to address the deficiencies identified above. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (if *pro se* complaint is dismissed on initial review, court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim").

**2. State law claims (Counts Two and Three)**

Next, Plaintiff claims that Defendants are liable for using her likeness without authorization. She brings this claim under the laws of two different states. Count Two asserts violation of the right of publicity under N.Y. Civil Rights Law §§ 50-51 and Count Three asserts appropriation of likeness under the Connecticut common law.

Count Two alleges: "Defendants willfully, knowingly, and intentionally used Plaintiff's portrait and picture within the State of New York and nationwide for advertising and trade purposes without obtaining prior written consent, directly violating Plaintiff's statutory rights." ECF 1 at 5. In New York, claims alleging either invasion of privacy (i.e., the plaintiff never sought publicity) or violation of the right of publicity (i.e., plaintiff sought publicity but did not give consent for a particular use) arise under N.Y. Civil Rights Law §§ 50-51. *Electra*, 987 F.3d at 248–49. Plaintiff claims violation of the right of publicity, both explicitly in her claim and impliedly in her allegations that she is a public figure and "established social media influencer," that "Defendant Talisha Jones had direct access to Plaintiff's distinct photographic image and brand materials through professional channels and public industry portfolios," and that

Defendants "generated substantial commercial value . . . by leveraging the visual identity and physical face of the Plaintiff without authorization or compensation. ECF 1 at 8.

Her Connecticut claim is materially the same, alleging that "Defendants intentionally appropriated Plaintiff's unique facial features within the State of Connecticut for their own corporate advantage and commercial profit, destroying Plaintiffs exclusive control over her own professional brand architecture and causing measurable economic and reputational harm." ECF 1 at 5. In Connecticut, "appropriation of the other's name or likeness" is one of four loosely related categories that fall under the tort of invasion of privacy as defined in the Restatement (Second) of Torts.[2] *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 127–28 (1982) (citing 3 Restatement (Second), Torts § 652A).

However, Plaintiff cannot challenge a single course of conduct under the substantive laws of two different states. *Hernandez v. Off. of the Comm'r of Baseball*, No. 18-cv-9035 (JPO), 2019 WL 3034841, at *2 (S.D.N.Y. July 11, 2019) (applying that principle in case alleging unlawful employment practices); *see also*, *e.g.*, *Weber v. Nat'l R.R. Passenger Corp.*, No. 84-cv-564 (WWE), 1986 WL 10333, at *3 (D. Conn. May 7, 1986) (determining whether Connecticut or New York law should apply to invasion of privacy claim). Consequently, the Court must conduct a choice of law analysis, applying the forum state's choice of law rules because these are not federal question claims. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state.").

[2] Those four categories are: "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." *Goodrich* at 128.

**a. Connecticut law governs the appropriation of likeness claim**

Connecticut courts look to the Restatement (Second) of Conflict of Laws to determine choice of law concerning invasion of privacy. *See Howes v. Hasampour*, No. CV095025841S, 2010 WL 1565544, at *1 (Conn. Super. Ct. Mar. 23, 2010); *Lord v. Lord*, No. CV010380279, 2002 WL 31125621, at *5–6 (Conn. Super. Ct. Aug. 20, 2002). The Restatement provides that "[i]n an action for an invasion of a right of privacy, the local law of the state where the invasion occurred determines the rights and liabilities of the parties . . . unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties[.]" Restatement (Second) of Conflict of Laws § 152 (1971). The comments further explain that where the invasion involves appropriation of name or likeness, the place of invasion "is where the complained-of matter was communicated to a person other than the plaintiff." *Id.*, comment (c).

The Complaint does not allege any significant relationship with New York. At most, it states that Plaintiff was "a former Miss Black New York USA [and] a Miss New York USA Finalist." ECF 1 at 8. Nor do the allegations link the publishing of Plaintiff's likeness to a particular state. Instead, the Complaint alleges that her image was displayed without authorization on the "primary visual cover art and promotional materials" for the album *Unfolded*, which was "distributed by Defendants globally and made available for commercial streaming and digital purchase across all major Digital Service Providers (DSPs), including Apple Music, Spotify, YouTube Music, Tidal, and Amazon Music." ECF 1 at 8. At best, even assuming Defendants generated or published the Xania Monét materials in the states where they reside, the Complaint alleges that Defendant Jones and TJM are located in Tennessee and Defendant Hallwood is located in California, so there is no ostensible connection to New York.

Moreover, the comment to the Restatement advises that where a defendant's conduct and the resulting invasion occur in different states, "the local law of the state where the invasion of privacy occurred will usually be applied," especially "when the plaintiff has a settled relationship to that state." Restatement (Second) of Conflict of Laws § 152 (1971), comment (f). The comment explains: "One reason for the rule is that persons who cause injury in a state should not ordinarily escape liability imposed by the local law of that state on account of the injury." *Id.*

Although none of these considerations maps precisely onto the present circumstances, Connecticut plainly has a more significant relationship to the issue than New York given that Plaintiff resides in Connecticut and suffered the alleged injury in this state and there is no allegation of conduct occurring specifically in New York. *Cf.*, *e.g.*, *Weber*, 1986 WL 10333, at *2 (applying New York invasion of privacy law to Connecticut resident's false light claim because he was in New York when he heard the injurious broadcast). Consequently, I recommend that the Count Two claim for violation of the right to publicity under New York statutory law should be DISMISSED WITHOUT LEAVE TO AMEND.

**b. The Connecticut claim should proceed**

Meanwhile, the Count Three appropriation of likeness claim under Connecticut law appears to satisfy the pleading requirements. Even if the federal Lanham Act claim is dismissed, Plaintiff has adequately pleaded diversity of citizenship and the amount in controversy threshold. ECF 1 at 4. Additionally, the allegations state a viable claim of invasion of privacy under Connecticut law. Because the Connecticut Supreme Court cited the Restatement (Second) of Torts when recognizing the cause of action, *Goodrich*, 188 Conn. at 128, the Second Circuit has looked to the Restatement to define its scope. *See In re Jackson*, 972 F.3d 25, 38 (2d Cir. 2020). The Restatement provides: "One who appropriates to his own use or benefit the name or likeness

of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C (1977). The comments go on to explain: "The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose [although] the rule stated is not limited to commercial appropriation[.]" *Id.*, comment (b). The Complaint alleges, in essence, that Defendants found Plaintiff's images online and used them as a model for their digital avatar Xania Monét, which is the digital face of their musical products. ECF 1 at 5 ("Defendants intentionally appropriated Plaintiff's unique facial features within the State of Connecticut for their own corporate advantage and commercial profit, destroying Plaintiffs exclusive control over her own professional brand architecture and causing measurable economic and reputational harm."). These allegations state a plausible claim for an appropriation of likeness under the Connecticut common law tort.

Because the current record only contains allegations, I do not recommend that the Court make a final choice of law determination at present. However, given that Plaintiff cannot pursue the same claim under Connecticut and New York law simultaneously and the Complaint does not allege any connection to New York, I recommend that the duplicative Count Two claim under New York law be DISMISSED WITHOUT LEAVE TO AMEND[3] and that Plaintiff be permitted to proceed with the appropriation of likeness claim (Count Three) under Connecticut law without prejudice to asserting, based on a more developed record, that some other state's law should apply.

---

[3] *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("a futile request to replead should be denied" such as where the "problem with [the] causes of action is substantive [and] better pleading will not cure it").

**C. Conclusion**

For the foregoing reasons, I recommend that Count One be DISMISSED with leave to amend, Count Two be DISMISSED WITHOUT LEAVE TO AMEND, and Count Three be permitted to proceed.

This is a recommended ruling. *See* Fed. R. Civ. P. 72(b)(1). **Any objections to this recommended ruling must be filed with the Clerk of the Court on or before October 27, 2026.** *See* Fed. R. Civ. P. 72(b)(2) (objections to recommended ruling due fourteen days after being served). *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 and 6(a); D. Conn. L. Civ. R. 72.2; *Small v. Secretary of H.H.S.,* 892 F.2d 15 (2d Cir. 1989) (per curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**, on this 13th day of October, 2026, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
Hon. S. Dave Vatti
United States Magistrate Judge